**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ANTHONY J. TRELLO and
TAMMY TRELLO,

                        **Plaintiffs,**

                v.                                    1:21-CV-987
                                                       (FJS/CFH)

KELLY MCKEIGHAN, *in his official
capacity as a pistol licensor*; JEFFREY
MURPHY, *in his official and individual
capacities as Washington County Sheriff*;
and JOHN WINCHELL, *in his individual
capacity*,

                        **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **GIANGRECO LAW GROUP, PC**<br>2390 Western Avenue<br>Guilderland, New York 12084<br>Attorneys for Plaintiffs | ADAM G. GIANGRECO, ESQ. |
| **MARCELLE LAW**<br>61 Devonshire Drive<br>Slingerlands, New York 12159<br>Attorneys for Plaintiffs | THOMAS MARCELLE, ESQ. |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendant McKeighan | ADRIENNE J. KERWIN, ESQ. |
| **JOHNSON & LAWS, LLC**<br>646 Plank Road<br>Suite 205<br>Clifton Park, New York 12065<br>Attorneys for Defendant Murphy<br>and Defendant Winchell | APRIL J. LAWS, ESQ.<br>LORAINE CLARE JELINEK, ESQ. |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND

This action stems from an incident that occurred on March 9, 2021, in which uniformed deputies from the Washington County Sheriff's Office ("WCSO") surprised Plaintiffs Tony and Tammy Trello at their home and presented them with a letter, signed by "local gun licensor" Defendant Kelly McKeighan, ordering revocation of Mrs. Trello's pistol permit.[1] *See* Dkt. No. 13, Amend. Compl., at ¶ 1. The deputies then seized Plaintiffs' jointly-owned and registered pistols, "leaving [Plaintiffs] without their pistols to adequately defend and protect themselves in their home." *See id.* at ¶¶ 2, 31-37, 55-62. Plaintiffs commenced this action on September 7, 2021, asserting three causes of action for violations of their Second Amendment and Fourteenth Amendment due process rights. *See* Dkt. No. 1, Compl., at ¶¶ 42-52.

More specifically, Plaintiffs allege that Defendant McKeighan ordered revocation of Mrs. Trello's license after she was charged with two counts of petit larceny for allegedly shoplifting approximately thirty dollars' worth of merchandise from a Walmart in January 2021. *See* Dkt. No. 13 at ¶ 42. According to Plaintiffs, on March 8, 2021, Defendant John Winchell, who is the Washington County Undersheriff, allegedly informed Defendant McKeighan of Mrs. Trello's charges and recommended that her license to possess her handguns be revoked and her weapons seized. *See id.* at ¶ 46. The same day, "following [Defendant Winchell's] recommendation," Defendant McKeighan suspended Mrs. Trello's pistol license "pending the

---

[1] Defendant McKeighan is a County Court Judge and Acting New York Supreme Court Judge in Washington County; and, as part of his duties, he serves as a pistol licensing official. *See* Dkt. No. 15-1, Def. McKeighan's Memorandum in Support, at 3.

outcome of the criminal charges." *See id.* at ¶¶ 50-51.  When two sheriff's deputies went to Plaintiffs' home the next day to seize the pistols and Mrs. Trello's license, Mr. Trello explained that he also owned both pistols, his license was valid, and he requested that the pistols be turned over to his sole custody.  *See id.* at ¶¶ 55-60.  Ultimately, however, Plaintiffs surrendered the pistols, and the WCSO took possession and retained them.  *See id.* at ¶ 61.

The next day, March 10, 2021, Mrs. Trello wrote Defendant McKeighan a letter advising him that her husband also owned the guns and requesting Defendant McKeighan to direct the WCSO to return them to Mr. Trello "while [her criminal] situation is being settled." *See id.* at ¶¶ 64-66.  Defendant McKeighan did not respond to that letter.  *See id.* at ¶ 67.  In April 2021, Mrs. Trello settled that case when she pled guilty to one count of disorderly conduct, a violation, in full satisfaction of the charges, and promptly paid a $100 fine and $30.76 in restitution.  *See id.* at ¶¶ 75-76.  After Mrs. Trello's criminal case was resolved, Defendant McKeighan did not conduct a hearing to determine if the continued seizure of Plaintiffs' pistols was warranted.  *See id.* at ¶ 88.  However, after Plaintiffs' former counsel contacted him, Defendant McKeighan ordered on August 27, 2021, that Defendant Winchell must return the pistols to Mr. Trello; the WCSO returned them on September 20, 2021.  *See id.* at ¶¶ 89, 91.[2]  Plaintiffs argue that Defendant Winchell and Defendant Murphy, who is the Washington County Sheriff (collectively referred to as the "WCSO Defendants"), "knowingly kept [Plaintiffs'] pistols subsequent to August 27, 2021, knowing that [they] had no lawful right to keep possession of [them]."  *See id.* at ¶¶ 100-101.

---

[2] Notably, this is the day before Plaintiffs filed their amended complaint on September 21, 2021, yet Plaintiffs also allege in that complaint that "until the present, the Sheriff['s] Office has had continuous custody and possession of the pistols." *See* Dkt. No. 13 at ¶ 62.


As a result, Plaintiffs first allege that Defendants violated Mr. Trello's Second Amendment rights by confiscating and retaining his pistols. *See* Dkt. No. 13, Amended Complaint at ¶ 103. Second, Plaintiffs allege that Defendants violated Mrs. Trello's Second Amendment rights by confiscating and retaining her pistols and pistol license subsequent to April 2021. *See id.* at ¶ 105. Third, Plaintiffs allege that Defendants violated both Plaintiffs' procedural due process rights under the Fourteenth Amendment because Plaintiffs were not provided with notice or an opportunity to be heard prior to deprivation of their property. *See id.* at ¶¶ 107-114. To compensate them for these violations, Plaintiffs seek declaratory and injunctive relief. *See id.* at Wherefore Clause. Specifically, Plaintiffs seek declarations from the Court that Defendants' actions in seizing and retaining possession of Plaintiffs' guns were unconstitutional and that Defendants violated Plaintiffs' due process rights. *See id.* Plaintiffs also request that the Court order Defendant McKeighan to return Mrs. Trello's pistol license to her and award each Plaintiff $1.00 in nominal damages, plus attorneys' fees and costs. *See id.*

In response, Defendants have moved to dismiss Plaintiffs' amended complaint against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 14, 15. Plaintiffs oppose both motions. *See* Dkt. Nos. 21, 25.

## II. DISCUSSION

### A. Motion to dismiss standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). Therefore, under this standard, a plaintiff must support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Thus, if the plaintiff has not "'nudged [his] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint. *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

"'The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is "substantively identical" to the 12(b)(6) standard.'" *Rehab. Support Servs. v. City of Albany*, No. 1:14CV0499 (LEK/RFT), 2015 U.S. Dist. LEXIS 86081, *6 (N.D.N.Y. July 2, 2015) (Kahn, J.) (quoting *Berkovitz v. Vill. of S. Blooming Grove*, No. 09 CIV 0291, 2010 U.S. Dist. LEXIS 93563, 2010 WL 3528884, at *5 (S.D.N.Y. Sept. 3, 2010) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003))). "'To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue.'" *Id.* at *12 (quoting *Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted)).

### B. Defendant McKeighan's motion to dismiss

Defendant McKeighan argues that the Eleventh Amendment bars Plaintiffs' claims against him. *See* Dkt. No. 15-1, Def. McKeighan's Memorandum in Support, at 5. Specifically, he asserts that the Eleventh Amendment bars claims for nominal damages against state officials in their official capacities, *see id.* (citing *Jusino v. Rinaldi*, No. 3:18cv2004(MPS), 2019 U.S. Dist. LEXIS 64039, *9 (D. Conn. Apr. 15, 2019)) (parenthetical omitted), and injunctive and

declaratory relief stemming from a state official's past violation of a plaintiff's constitutional rights, *see id.* at 6 (quoting *Burton v. Salerno*, No. 3:20-cv-1926 (VAB), 2021 U.S. Dist. LEXIS 148518, *38 (D. Conn. Aug. 9, 2021)). Defendant McKeighan contends that no exception applies to these rules in this case. *See id.* Furthermore, he argues that Plaintiffs are not entitled to a declaration that Defendants violated Plaintiffs' Fourteenth Amendment due process rights because they asserted a procedural due process claim, and "[i]t has long been held that the availability of an Article 78 proceeding is all of the process due to challenge the revocation of a pistol license." *See id.* at 7 (citing, *e.g.*, *Negron v. Suffolk Cnty. Police Dep't*, No. 18-CV-5426(JS)(ARL), 2020 U.S. Dist. LEXIS 114097, *14 (E.D.N.Y. June 29, 2020)).

"'While judicial immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.'" *Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 U.S. Dist. LEXIS 104711, *8 (N.D.N.Y. Apr. 28, 2022) (Hummel, M.J.) (quoting *Washington v. Ciccone*, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021), *report and recommendation adopted*, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021) (citing *inter alia Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020))) (parenthetical omitted). This means that a state official, including a judge, is protected under the Eleventh Amendment from suit for money damages. *See id.*; *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122-23 (2d Cir. 2020), *overruled in part on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) (citations omitted). "'In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."'" *Terpening*, 2022 U.S.

Dist. LEXIS 104711, at *9 (quoting *Amato* [*v. McGinty*, No. 1:21-CV-00860 (GLS/TWD), 2022 U.S. Dist. LEXIS 14507], 2022 WL 226798, at *7 [(N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.)] (quoting 42 U.S.C. § 1983)).  With respect to declaratory relief, the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past[.]"  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citation omitted).  The narrow exception to this rule is that, "[u]nder the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future."  *Burton v. Salerno*, No. 3:20-cv-1926 (VAB), 2021 U.S. Dist. LEXIS 148518, *38 (D. Conn. Aug. 9, 2021) (citing *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000)).

In this case, Plaintiffs have sued Defendant McKeighan in his official capacity seeking nominal damages and injunctive and declaratory relief.  *See generally* Dkt. No. 13.  There is no dispute that Defendant McKeighan is a County Court Judge and an Acting New York Supreme Court Justice who is protected from suit under the Eleventh Amendment when acting in his judicial capacity.  However, Plaintiffs argue that he was acting in his capacity as a local licensing officer, and not his judicial capacity, when he revoked Mrs. Trello's permit and ordered removal of the firearms.  Notwithstanding this argument, the caselaw is clear that Defendant McKeighan's role as a licensing officer is part of his judicial duties.  *See Libertarian Party*, 970 F.3d at 124; *see Aron v. Becker*, 48 F. Supp. 3d 347, 364 (N.D.N.Y. 2014).  "The suspension or revocation of a pistol permit is a function normally performed by a judge."  *Cea v. Bradley*, No. 1:02-CV-448 (FJS/DRH), 2003 U.S. Dist. LEXIS 28824, *6 (N.D.N.Y. Feb. 12,

2003) (Scullin, C.J.). In fact, pursuant to New York Penal Law § 265.00(10), in Washington County, only a judge is deemed a "licensing officer" for purposes of issuing a pistol permit. *See* N.Y. Penal L. § 265.00(10); *Aron*, 48 F. Supp. at 364. Thus, because Defendant McKeighan was acting in his judicial capacity when suspending Mrs. Trello's pistol permit and ordering removal of her firearms, the Court finds that he is entitled to immunity from suits for damages in his official capacity under the Eleventh Amendment.

As stated above, the only exception in which Plaintiffs may recover against Defendant McKeighan in his official capacity is for prospective declaratory or injunctive relief to address an ongoing or future violation of their rights. In this case, Plaintiffs' firearms and Mrs. Trello's pistol license were seized on March 9, 2021. *See* Dkt. No. 13 at ¶¶ 61-62. Plaintiffs further admit that the WCSO had possession of the pistols until September 20, 2021, when they were returned to Mr. Trello in response to Defendant McKeighan's order. *See id.* at ¶¶ 89, 91. Thus, the Court dismisses Mr. Trello's Second and Fourteenth Amendment claims against Defendant McKeighan as his firearms were returned to him, and he is no longer seeking prospective relief.

Mrs. Trello further argues that she is suffering an ongoing violation of her Second Amendment right to bear arms with respect to her revoked firearms and license. She also contends that she is suffering an ongoing violation of her Fourteenth Amendment procedural due process rights with respect to her revoked pistol license because she did not receive notice or a hearing to challenge that revocation, and her pistol license has not been returned to her. *See* Dkt. No. 13 at ¶¶ 110-114. As will be discussed below, the Court finds that Mrs. Trello is not entitled to relief from Defendant McKeighan on either of these claims because she fails to state such claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Second Amendment protects the "right to keep and bear Arms" from government infringement. *See* U.S. Const. Amend. II. Mrs. Trello alleges that Defendant McKeighan violated her Second Amendment rights by causing her pistols and pistol license to be confiscated subsequent to her guilty plea in April 2021. *See* Dkt. No. 13 at ¶ 105. Plaintiffs attached Defendant McKeighan's letter to their amended complaint, in which he indicated that he received Defendant Winchell's arrest notification for Mrs. Trello and request that her pistol permit be revoked and weapons be surrendered. *See* Dkt. No. 13, Ex. B. Defendant McKeighan remarked that, at that time, he was following Defendant Winchell's recommendation to the extent that he suspended Mrs. Trello's pistol license "pending the outcome of her criminal charges." *See id.* He also argues that suspending or revoking Mrs. Trello's permit was within his judicial duties under New York's Penal Law. *See* Dkt. No. 23 at 9-10.

New York's Penal Law expressly provides that "a license issued pursuant to [N.Y. Penal L. § 400.01] may be revoked and cancelled at any time by the licensing officer or any judge or justice of a court of record." N.Y. Penal L. § 400.00(11). The statute further provides that the official revoking the license must immediately notify the police authorities of the locality. *See id.* The licensing officer may revoke or cancel the license *sua sponte*, and "[h]e enjoys wide discretion in exercising this 'extraordinary power[.]'" *Bach v. Pataki*, 408 F.3d 75, 80 (2d Cir. 2005) (quoting *O'Brien* [*v. Keegan*], 87 N.Y.2d [436,] 439 [(N.Y. 1996)]) (other citations omitted). Based on the foregoing, the Court finds that Defendant McKeighan, acting in his judicial capacity, had the authority to suspend or revoke Mrs. Trello's pistol permit "at any time," including after she pled guilty in April 2021 to a violation of disorderly conduct. Without a valid pistol permit, Mrs. Trello would not have lawfully been able to possess her two

pistols, thus necessitating her surrender of them.  Therefore, the Court dismisses Plaintiffs' second cause of action against Defendant McKeighan because Mrs. Trello failed to state a claim that her Second Amendment rights were violated.

With respect to Mrs. Trello's Fourteenth Amendment claim, she alleges that Defendant McKeighan never provided her notice before he acted on Defendant Winchell's letter, nor did he provide her notice of his March 8, 2021 suspension letter.  *See* Dkt. No. 13 at ¶¶ 111-112.  Mrs. Trello further asserts that Defendants did not provide her with an opportunity to be heard subsequent to the deprivation of her property and Second Amendment rights.  *See id.* at ¶ 113.  "To assert a claim under Section 1983 based on an alleged violation of procedural due process, [a] plaintiff must plead (1) [s]he possesses a liberty or property interest protected by the Constitution or a federal statute, and (2) [s]he was deprived of that liberty or property interest without due process."  *Clavin v. Cnty. of Orange*, 620 F. App'x 45, 47-48 (2d Cir. 2015) (summary order) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)).  "Courts within this Circuit have held that because a New York State government official's issuance of a pistol permit is a discretionary act, an individual has no property interest in holding such a permit."  *El ex rel. Letite v. DeProspo*, No. 1:19-CV-8426 (CM), 2019 U.S. Dist. LEXIS 204672, *9-*10 (S.D.N.Y. Nov. 22, 2019) (citations omitted).  Nonetheless, "[e]ven if [a] [p]laintiff had a property interest in holding such a firearms license, [s]he cannot assert that [her] right to procedural due process was violated if state law provides an adequate remedy for the deprivation of that interest."  *Id.* at *10 (citations omitted).  "Courts have held that a proceeding under Article 78 of the New York Civil Practice Law and Rules is an adequate remedy to challenge decisions with respect to firearms licenses."  *Id.* (citations omitted); *accord*

*Negron v. Suffolk Cnty. Police Dep't*, No. 18-CV-5426(JS)(ARL), 2020 U.S. Dist. LEXIS 114097, *14 (E.D.N.Y. June 29, 2020) (citations omitted); *see also* N.Y. C.P.L.R. § 7803(3).

In this case, Mrs. Trello could have challenged her pistol license suspension "'as an arbitrary and capricious determination pursuant to N.Y. C.P.L.R. § 7803(3), which would have entitled [her] to a full hearing, and possibly a trial, before a New York State Supreme Court Justice with the power to annul'" Defendant McKeighan's suspension decision. *Negron*, 2020 U.S. Dist. LEXIS 114097, at *15 (quoting *Montalbano* [*v. Port Auth. of N.Y. & N.J.*], 843 F. Supp. 2d [473,] 485 [(S.D.N.Y. 2012)] (citations omitted)). It is undisputed that Mrs. Trello chose not to avail herself of that process, and she is now time-barred from commencing an Article 78 proceeding. Thus, the Court finds that Mrs. Trello has not plausibly established a violation of her procedural due process rights under the Fourteenth Amendment with respect to the revocation of her pistol permit. *See id.* Relatedly, because Mrs. Trello could not lawfully possess her two pistols, she was not deprived of her property rights without due process when Defendant McKeighan ordered them to be confiscated from her. The Court therefore dismisses Plaintiffs' third cause of action against Defendant McKeighan for failure to state a claim.

### C. WCSO Defendants' motion to dismiss

The WCSO Defendants argue that the Court should dismiss Plaintiffs' claims against them because Plaintiffs have failed to state causes of action for violations of their Second Amendment and Fourteenth Amendment due process rights. *See* Dkt. No. 14-6, WCSO Defs' Memorandum in Support, at 11. With respect to Plaintiffs' Second Amendment claims against the WCSO Defendants, they allege that Defendants violated their Second Amendment rights by confiscating – or causing to be confiscated – and retaining Plaintiffs' pistols and Mrs. Trello's

pistol license.  *See* Dkt. No. 13 at ¶¶ 103, 105.  More specifically, Plaintiffs allege that Defendant Winchell informed Defendant McKeighan of Mrs. Trello's charges and recommended that her pistol license be revoked and her weapons seized.  *See id.* at ¶ 46.  Plaintiffs further allege that Defendant Winchell "did not act upon his own accord but based upon the orders and policies established by [Defendant] Murphy and with both his explicit and implied consent."  *See id.* at ¶ 47.

The Court finds that *Dubois v. Beaury* is instructive here.  In that case, the plaintiff sued the district attorney defendant, Mr. Czajka, among others, for violating his Second Amendment rights.  *See Dubois v. Beaury*, No. 1:20-CV-86 (FJS/CFH), 2021 U.S. Dist. LEXIS 141452, *2 (N.D.N.Y. July 29, 2021) (Scullin, S.J.), *aff'd by* 2022 U.S. App. LEXIS 14647 (2d Cir. May 27, 2022) (summary order).  The plaintiff alleged that Mr. Czajka wrote a letter to two judicial licensing officials requesting to have the plaintiff's personal pistol license suspended and his two personal handguns seized.  *See id.* at *10, *13.  The court noted that this conduct was "not necessarily unheard of or beyond his scope of authority[.]"  *Id.* at *13.  "In fact, although licensing officers may revoke or suspend a pistol licensee's license *sua sponte*, *see* N.Y. Penal Law §§ 265.00(1), 400.00(11); *Matter of Ricciardone*, 159 A.D.3d at 1201, it seems unlikely that licensing officers would have sufficient information to initiate such proceedings in some cases without having a third party, in this case Defendant Czajka, provide them with the necessary information about a licensee to warrant suspending or revoking a license."  *Id.* at *13-*14.  The Court further held that, "upon receipt of Defendant Czajka's letter, Judge Nichols, and not Defendant Czajka, was solely responsible for initiating the License Action *sua sponte* by exercising his unilateral authority and discretion."  *Id.* at *14.  "Moreover," the court ruled, "even assuming that Defendant Czajka's letter had the legal effect of initiating the License

Action, he plainly had no involvement in Judge Nichols' unilateral determination to suspend Plaintiff's pistol license and confiscate his personal firearms." *Id.* at *14-*15. Therefore, the Court found that the plaintiff had not plausibly alleged that Mr. Czajka violated his Second Amendment rights. *See id.* at *15.

In this case, Plaintiffs have alleged that Defendant Winchell, like Mr. Czajka, wrote a letter to Defendant McKeighan informing him of Mrs. Trello's arrest and requesting that her pistol permit be revoked and her firearms surrendered. The Court finds that, upon receipt of Defendant Winchell's letter, Defendant McKeighan exercised his unilateral authority and discretion to *sua sponte* suspend Mrs. Trello's pistol license, which necessitated that she surrender her firearms. Even assuming that Defendant Winchell's letter initiated Mrs. Trello's license suspension and surrendering of her firearms, the Court finds that Mr. Winchell "plainly had no involvement" in Defendant McKeighan's unilateral determination to suspend Mrs. Trello's pistol license and confiscate her firearms. *See id.* at *14-*15. As such, the Court concludes that Mrs. Trello has not plausibly alleged that Defendant Winchell violated her Second Amendment rights; and, therefore, the Court dismisses Plaintiffs' second cause of action against Defendant Winchell.

The Court further finds that Defendant Winchell had even less personal involvement with respect to Mr. Trello's alleged Second Amendment violation because Defendant Winchell did not specifically seek to suspend Mr. Trello's pistol license or have his firearms confiscated from him. Relatedly, neither Plaintiff alleges that Defendant Murphy had any personal involvement in this action other than as a supervisor because he did not request that Defendant McKeighan suspend or confiscate Plaintiffs' licenses or firearms and did not physically confiscate those items. Although Plaintiffs allege that WCSO deputies confiscated them at his

direction, it is clear from the face of the amended complaint that Defendant Murphy only acted pursuant to Defendant McKeighan's court order. Accordingly, the Court dismisses Plaintiffs' first and second causes of action for violations of their Second Amendment rights, against both WCSO Defendants, because Plaintiffs have failed to plausibly allege their personal involvement in those claims.

Finally, with respect to Plaintiffs' third cause of action alleging violations of their Fourteenth Amendment procedural due process rights, the Court finds that Plaintiffs have failed to state a claim because, as addressed above, both Plaintiffs were afforded an opportunity for post-deprivation relief by filing an Article 78 proceeding, and both Plaintiffs failed to do so. Plaintiffs cannot now allege a deprivation of their procedural due process rights when they did not utilize the due process procedures that were afforded to them. As such, the Court dismisses Plaintiffs' third cause of action against the WCSO Defendants for failure to state a claim.[3]

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the WCSO Defendants' motion to dismiss Plaintiffs' amended complaint in its entirety, *see* Dkt. No. 14, is **GRANTED**; and the Court further

---

[3] Alternatively, to the extent that Plaintiffs sued the WCSO Defendants in their individual capacities, the Court also dismisses Plaintiffs' claims against them because they are government officials who were objectively reasonable in believing that their conduct in confiscating Mrs. Trello's pistol permit and firearms was pursuant to a valid court order and would not violate clearly established rights; and, therefore, they are entitled to qualified immunity. *See Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999).

**ORDERS** that Defendant McKeighan's motion to dismiss Plaintiffs' amended complaint in its entirety, *see* Dkt. No. 15, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

Dated: August 19, 2022
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge